# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE


Lyndsey M. Cowhig

            v.                                    Case No. 16-cv-515-PB

Megastore Auto Group, Inc., et al.


## REPORT AND RECOMMENDATION[1]

Invoking this court's federal-question and supplemental jurisdiction, plaintiff Lyndsey M. Cowhig brought claims against Megastore Auto Group, Inc. for sexual harassment, retaliation, and wrongful termination and against Megastore's president, Robert M. Waters, Jr., for retaliation under an aiding and abetting theory pursuant to New Hampshire Revised Statutes Annotated § 354-A.  See doc. no. 33.  In May 2018, a jury found Megastore liable for sexual harassment and awarded Cowhig $110,000 in total damages.  See doc. no. 115.  The jury found for the defendants on Cowhig's remaining claims, including her retaliation claim against Waters.  See id.  The clerk of court entered judgment in accordance with the jury's verdict.  Doc.

---

[1] A magistrate judge may typically resolve attachment motions by written order.  See Fraser Eng'g Co., Inc. v. IPS-Integrated Project Servs., LLC, 2018 DNH 067, 1, 2 n.2.  Given the dispositive nature of the conclusions herein, however, the court elects to issue a Report and Recommendation out of an abundance of caution.  See 28 U.S.C. § 636(b)(1)(A).

no. 115.  Following judgment, Judge Barbadoro awarded Cowhig
$158,575.50 in attorney's fees.  <u>See</u> June 12, 2018 Endorsed
Order.

Concerned that Megastore was liquidating its assets to
avoid paying the judgment and fees award, Cowhig filed a
postjudgment petition to attach certain vehicles in Megastore's
possession.  Doc. no. 117.  Judge Barbadoro referred that motion
to the undersigned, and the court granted the attachment
following a hearing.  <u>See</u> June 29, 2018 Endorsed Order.  At the
hearing, Cowhig orally moved for postjudgment discovery under
Federal Rule of Civil Procedure 69(a)(2), which the court took
under advisement.  Before the court had occasion to rule on that
motion, however, Megastore moved for a court order requiring
Cowhig to pay certain liens on the attached vehicles.  <u>See</u> doc.
no. 136.  On July 31, 2018, the court granted Cowhig's oral
motion for discovery and denied Megastore's motion with respect
to the liens.  Doc. no. 139.  In that order, the court cautioned
that "at some point the parties' post-judgment requests may
exceed the scope of [the] court's enforcement jurisdiction."
<u>Id.</u> at 4 (citation omitted).

Cowhig now seeks to secure her judgment through a petition
to attach Waters's real estate and tangible assets.  <u>See</u> doc.
no. 143.  She contends that the court has jurisdiction over this

2

petition as part of its ancillary jurisdiction to enforce its judgments and argues that she should be allowed to execute her judgment against Waters individually because Megastore and Waters are alter egos and Waters coordinated Megastore's attempts to liquidate its assets.  See id.  Waters, who represented himself at trial, secured counsel to defend against Cowhig's petition and objects to the attachment.  See doc. no. 149.

The court cannot reach the merits of Cowhig's petition unless it has the jurisdiction to do so.  See Gunn v. Minton, 568 U.S. 251, 256 (2013) (citation and internal quotation marks omitted) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute.").  Cowhig contends her petition falls within the court's ancillary enforcement jurisdiction.  Such jurisdiction "is a creature of necessity, which grants a federal court the inherent power to enforce its judgments."  Burgos-Yantín v. Municipality of Juana Díaz, 909 F.3d 1, 3 (1st Cir. 2018) (internal quotation marks omitted) (quoting Peacock v. Thomas, 516 U.S. 349, 356, 359 (1996)).  But a court's enforcement jurisdiction is not without its limits.  Ancillary jurisdiction "does not exist where the relief sought is of a different kind or on a different principle than that of the prior decree."  Id.

(internal quotation marks and brackets omitted) (quoting
Peacock, 516 U.S. at 358).  "Likewise, ancillary enforcement
jurisdiction is inapt when a party seeks to impose an obligation
to pay an existing federal judgment on a person not already
liable for that judgment."  Id. at 4 (quoting Peacock, 516 U.S.
at 357).

     At first blush, Cowhig's petition might appear to fall
comfortably within the court's ancillary enforcement
jurisdiction.  Cowhig is, after all, seeking an attachment, and
the Supreme Court has approved the exercise of ancillary
jurisdiction over attachment proceedings in certain contexts.
See Peacock, 516 U.S. at 356-57 (collecting cases).  Similarly,
the First Circuit has observed "that federal enforcement
jurisdiction is clear when state procedural mechanisms — such as
garnishment or attachment — allow the court to reach assets of
the judgment debtor in the hands of third parties in a
continuation of the same action."  Burgos-Yantín, 909 F.3d at 6
(citation and internal quotation marks omitted).

     Unlike in a typical postjudgment attachment proceeding,
however, Cowhig's current petition is not a mere continuation of
the underlying action.  Cowhig does not attempt to collect her
judgment from Waters based solely on Megastore's liability on
the sexual-harassment claim.  Nor is she simply trying to attach

4

Megastore assets that happen to be in Waters's possession.
Rather, Cowhig now argues for the first time that Waters should
be personally responsible for the judgment because he and
Megastore are alter egos.  "[A]n alter ego claim presents a
substantive theory seeking to establish liability on the part of
a new party not otherwise liable." U.S.I. Properties Corp. v.
M.D. Const. Co., 230 F.3d 489, 499 (1st Cir. 2000) (citation
omitted).  In part for this reason, the Supreme Court has held
that ancillary jurisdiction does not extend to a successive
action in which a federal judgment creditor attempts, under a
corporate-veil theory, to enforce a judgment against an
individual who was found not liable in the underlying action.
See Peacock, 516 U.S. 356-60.  The First Circuit reached the
same conclusion when an alter-ego claim was raised by a judgment
creditor for the first time in a supplemental proceeding in the
original action.  See U.S.I., 230 F.3d at 496-501.[2]  Because
Cowhig never previously raised her alter-ego theory in this
case, and because the jury found in Waters's favor at trial, the

--------------------------------------

[2] In U.S.I., the court rejected an attempt to distinguish
Peacock on the ground that the claim there was brought in a
separate, rather than supplemental, proceeding.  230 F.3d at 500
n.10.  The court noted that "[t]he simple fact that the
supplemental proceeding is brought as part of the same case does
not relieve the court from independent consideration of its
authority to address the specific claims before it in [that]
proceeding." Id. (citation omitted).

court likewise does not have ancillary jurisdiction over
Cowhig's petition.

Cowhig seeks refuge in the fact that Waters, as a defendant
in the underlying action, is not a new party.  This argument is
undermined by the Supreme Court's decision in Peacock.  As
noted, the judgment creditor in that case sought to extend
liability under a corporate-veil theory to an individual who,
like Waters, was named as a defendant but found not liable in
the underlying action.  Peacock, 516 U.S. at 351-52.  The Court
concluded that the fact that individual was not otherwise liable
and that the attempt to execute the judgment was based on
"entirely new theories of liability" meant that ancillary
jurisdiction did not extend to the enforcement action.  Id. at
358-60.  The same as true in this case.  Waters's status as a
defendant is therefore immaterial.

The court is likewise unpersuaded by Cowhig's argument that
ancillary jurisdiction extends to her petition because her
alter-ego claim and her underlying claims are factually
interdependent.  While the First Circuit has "not rule[d] out
the possibility that some alter ego claims will present
sufficiently intertwined factual issues to warrant [ancillary
jurisdiction]," U.S.I., 230 F.3d at 499 n.9, Cowhig makes no
attempt to explain why that is so here.  Nor has she cited any

6

case in which a federal court concluded that it possessed
ancillary jurisdiction over an alter-ego claim raised for the
first time after judgment was entered.  The court therefore
declines to find jurisdiction on this basis.

Cowhig also suggests that this court has ancillary
jurisdiction over her petition because state-court attachment
procedures are available in federal court under Federal Rule of
Civil Procedure 64.  The First Circuit rejected an analogous
argument in U.S.I., noting that the availability of state-law
enforcement procedures in federal proceedings under Rule 69(a)
did not establish federal enforcement jurisdiction over those
procedures.  See 230 F.3d at 498 n.8.  In so concluding, the
court emphasized that "as courts of general jurisdiction, [state
courts] are free to employ any enforcement mechanisms warranted
by state law," whereas "the limited nature of federal
jurisdiction in general confines the scope of enforcement
jurisdiction as well."  Id.  The court further noted that the
Federal Rules of Civil Procedure, by their express terms, "can
neither expand nor limit the jurisdiction of the federal
courts."  Id. (citing Fed. R. Civ. P. 82).  Because this
reasoning has equal force in the context of Rule 64, Cowhig's
reliance on that rule is unavailing.

Finally, Cowhig argues that a state court considering her

7

petition to attach would "not have the benefit of understanding
the unique context of this case . . . ."  Doc. no. 143-1 at 3-4.
The Supreme Court made clear in Peacock that convenience and
judicial economy alone cannot justify extending ancillary
jurisdiction to claims over which such jurisdiction would not
otherwise lie.  See 516 U.S. at 355 (citation and internal
quotation marks omitted) ("[N]either the convenience of
litigants nor considerations of judicial economy can justify the
extension of ancillary jurisdiction over Thomas' claims in a
subsequent proceeding.").  Because there is no other basis for
ancillary jurisdiction over her petition, Cowhig's convenience
and judicial economy arguments similarly fail.

     For all of these reasons, the court concludes that it does
not have ancillary enforcement jurisdiction over Cowhig's
petition to attach (doc. no. 143).  Because Cowhig does not
assert, and the court cannot discern, any independent basis for
federal jurisdiction over that petition, see U.S.I., 230 F.3d at
500, the district judge should dismiss the petition without
prejudice to Cowhig refiling it as a separate action in state
court.  Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  The fourteen-day period may be extended
upon motion.  Failure to file specific written objections to the

Report and Recommendation within the specified time waives the
right to appeal the district court's order.  See Santos-Santos
v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R.
Civ. P. 72(b)(2).


_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge


January 11, 2019

cc:   Jason R.L. Major, Esq.
      Sean Robert List, Esq.
      Robert M. Waters, Jr., Esq.
      Samuel J. Donlon, Esq.
      Joshua Henry Bearce, Esq.
      Matthew R. Johnson, Esq.